IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

GREENVILLE DIVISION

| | |
|---|---|
| James O. Senn, # 313954, ) | |
| ) | |
| ) | Civil Action No. 6:15-235-MGL-KFM |
| Petitioner, ) | |
| ) | **REPORT OF MAGISTRATE JUDGE** |
| vs. ) | |
| ) | |
| Larry Cartledge, ) | |
| ) | |
| ) | |
| Respondent. ) | |

Petitioner, a state prisoner who is represented by counsel, seeks habeas corpus relief pursuant to Title 28, United States Code, Section 2254.

Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Local Civ. Rule 73.02(B)(2)(c) (D.S.C.), this magistrate judge is authorized to review post-trial petitions for relief and submit findings and recommendations to the district court.

## BACKGROUND

Petitioner is currently incarcerated at Perry Correctional Institution in the South Carolina Department of Corrections ("SCDC"). Petitioner was indicted by the Lexington County Grand Jury in August 2005 for trafficking in ice, crank, or crack—400 grams or more (Indictment No. 2005-GS-32-3212) (app. 358-59).

At trial, Petitioner was represented by R. Theo Williams (app. 1). Petitioner proceeded to a jury trial on February 13-14, 2006, before the Honorable William P. Keesley, Circuit Court Judge. The jury found Petitioner was guilty as charged and Judge Keesley sentenced him to twenty-five years' imprisonment (app. 1-354; 360).

***Underlying Case Facts***

On April 9, 2005, West Columbia police officers passed by Petitioner in his vehicle on the side of the road. The vehicle was running with the lights off. Subsequently, Petitioner drove from the area at a high rate of speed and was stopped by the officers for failure to use a turn signal. During the traffic stop, the officers learned Petitioner was driving under suspension and arrested him (app. 26-27). The officers also smelled ammonia coming from the vehicle (app. 27). The officers searched the vehicle and found two containers filled with clear liquid, salt, a burner, tubing, light bulbs and a tank (app. 28-29). Based on the items found in the vehicle, the officers called a methamphetamine technician, Chris Stout of the Lexington County Sheriff's office, to assist (app. 30).

Officer Stout testified the West Columbia Police Department asked him to determine if the vehicle was a meth lab (app. 89). Stout testified how various items found in the vehicle could be used to make methamphetamine (app.111 -18). Stout took small samples of the clear liquid found in the two large containers (app. 121-23). Stout testified that the clear liquid found was ether and he suspected the ether contained suspended methamphetamine (app. 123). Stout also collected coffee filters containing a white residue (app. 121). The two small samples and the coffee filters were submitted to SLED for chemical testing. Agent McCoy, a chemist at SLED, testified that the sample vial held a liquid that contained methamphetamine and the filter paper contained methamphetamine residue (app 157). Trial counsel moved for a hearing outside the presence of the jury to contest the State's evidence of the methamphetamine's weight (app. 158). The trial judge overruled the objection (app. 169). Agent McCoy testified that the first sample vial he tested contained 8.6 milliliters of liquid. Converting the liquid measurement to a solid measurement resulted in a weight of 5.84 grams (app. 235-37). As to his method for determining how much liquid the original container found in the vehicle contained, Agent McCoy testified:

2

> Basically I would know that this container [the sample vial] contained 8.6 milliliters and that weighed 5.84 grams. Assuming that the volume of liquid that's contained in there, in that container [container found in the car] was 3.78 liters or 3,780 milliliters, from that, from what we have here I can determine theoretically how much that liquid weighs.

(App. 237).

Agent McCoy further testified, "Theoretically if that did have 3.78 liters of liquid, the weight is 2,567 grams." (App. 237-38).

At the close of the State's case, defense counsel moved for a directed verdict based on the fact that it was improper to include the weight of the liquid in determining the weight of methamphetamine to be attributed to Petitioner (app. 286-89). The judge denied the directed verdict motion (app. 289-91).

### *Direct Appeal*

On February 23, 2006, Petitioner filed a notice of appeal. He was represented by Assistant Appellate Defender Kathrine H. Hudgins. On April 1, 2008, Petitioner filed a final brief, in which he presented the following issues:

> 1. Did the trial judge err in refusing to grant a directed verdict when the State failed to prove an amount of methamphetamine over 400 grams?
>
> 2. Did the judge err in refusing to charge the lesser included offenses of possession and trafficking in an amount less than 400 grams?

(Doc. 17-5 at 3). The State filed its final brief on March 17, 2008.

On February 12, 2009, the South Carolina Court of Appeals affirmed Petitioner's conviction and sentence. *State v. James O. Senn*, 2009-UP-084 (S.C. Ct. App., filed Feb. 12, 2009) (app. 361-62). Remittitur was issued on March 2, 2009 (app. 363).

3

***PCR***

Petitioner filed a *pro* se application for post-conviction relief ("PCR") (2009-CP-32-1771) on February 23, 2009 (app. 364-70). Petitioner raised the following allegations in his application:

> A. Ineffective assistance of counsel:
>
> a. Failure to prepare, conduct an investigation, research the statutory provisions and caselaw, interview or obtain witnesses, consult with or obtain an expert chemist, and provide effective representation at trial.
>
> b. Failure to inform the Applicant regarding the mandatory sentence in relation to the plea offers made by the state.
>
> c. Failure to preserve issues for appellate review by failing to move to suppress the evidence, make contemporaneous objections, and make proper motions for a mistrial and/or directed verdict.

(App. 364-70). The State filed a return on December 16, 2009 (app. 371-74).

On January 24, 2011, through PCR counsel Tricia A. Blanchette, Petitioner filed an amended application, adding the following additional claims of ineffective assistance of counsel:

> 1. Ineffective assistance of trial counsel for failure to prepare and investigate, specifically, but not limited to the following claims:
>
> > a. Failure to provide to the Applicant and review with him the complete discovery materials prior to trial. Specifically, but not limited to, the SLED file and drug reports.
> >
> > b. Failure to conduct an independent investigation. Specifically, but not limited to, failure to determine how the State derived a weight from the drug evidence
> >
> > c. Failure to ensure that the Applicant was fully advised regarding the plea offers and to ensure that the rejection of such offers were knowingly and understandably made by the Applicant.

4

d.  Failure to advise the Applicant regarding the applicable statutes and mandatory sentencing provisions.

e. Failure to make the necessary arrangements to procure the testimony of Timothy Senn.

2.  Ineffective assistance of trial counsel for failure to utilize an expert to investigate and testify regarding the drug evidence.

3.  Ineffective assistance of counsel for failure to file and argue a Motion to Suppress the Evidence due to the handling, sampling, and testing of the drug evidence.

4.  Ineffective assistance of trial counsel for failure to argue the Motion to Suppress Evidence, which was filed on January 9, 2006, or raise any argument regarding probable cause for the traffic stop at issue.

5.  Ineffective assistance of counsel for failure to properly prepare to cross-examine the State's experts regarding their qualifications and work in the case. Failure to ensure that the State's experts adhered to the rulings made by the Court regarding the scope and/or limits on their testimony.

6. Ineffective assistance of counsel for the failure to effectively handle the admission and explanation of the drug evidence, specifically regarding the weight of the drug evidence. Specifically, but not limited to the following:

a. Failure to cross-examine the State's witnesses regarding the sampling procedure used and method for obtaining the weight of the drug evidence.

b. Failure to enter contemporaneous objections when the State's witness testified regarding the drug amounts and mathematical equations.

7. Ineffective assistance of counsel for failure to properly address the Court's questions regarding the status of the law at issue and appropriate interpretation of such law.

8. Ineffective assistance of counsel for failure to present the testimony of Timothy Senn at trial.

9. Ineffective assistance of counsel for failure to move to have the juror [name redacted] removed due to his conversation with the extra juror [name redacted].

10. Ineffective assistance of counsel for failure to make a viable argument for a directed verdict and a charge for the lesser included offense.

11. Ineffective assistance of counsel for failure to request a simple possession charge.

12. Ineffective assistance of appellate counsel for failure to raise all meritorious issues on appeal. Specifically, but not limited to the following:

> a. Failure to address the issue involving the extra juror and trial counsel's motion for a mistrial.
>
> b. Failure to address the qualifications and court's ruling on the State's experts.

(App. 395).

On January 31, 2011, the Honorable R. Lawton McIntosh held an evidentiary hearing into these claims at the Lexington County Courthouse. Petitioner was present with counsel Blanchette. On September 7, 2011, the PCR judge issued an order of dismissal (app. 603). Thereafter, Petitioner filed a timely Rule 59 motion (app. 632-36). The State filed its return on October 27, 2011. The PCR court denied the motion on December 6, 2011 (app. 637-42, 643-44).

**PCR Appeal**

On March 14, 2012, Petitioner filed a notice of appeal. On March 14, 2012, Petitioner filed a petition for writ of certiorari, in which he presented five issues to the South Carolina Supreme Court:

> I. Whether the Lower Court Erred in Excusing Trial Counsel's Failure to Utilize Timothy Senn as Trial Strategy When Such Failure Was Clearly Ineffective Assistance of Counsel that Greatly Prejudiced the Trial Outcome.

6

II. Whether the Lower Court Erred in Finding that Trial Counsel Did Not Render Ineffective Assistance in the Rejection of the State's Plea Offer.

III. Whether the Lower Court Erred in Finding Trial Counsel Was Not Ineffective in His Preparation and Investigation Prior to Trial and Performance at Trial Related to the Drug Evidence and Legal Issues Involved.

IV. Whether the Lower Court Erred in Failing to Consider the Complete Breakdown of the Adversarial Process that Resulted in Presumed Prejudice Pursuant to U.S. v. Cronic, 466 U.S. 648, 653, 104 S.Ct. 2039, 2043 (1984).

V. Whether the Lower Court Erred in Finding Appellate Counsel Effective When There is No Evidence in the Record to Support the Lower Court's Ruling that Appellate Counsel Exercised Reasonable Professional Judgment in Excluding Issues on Appeal.

The State filed its return on July 20, 2012 (doc. 17-9).

The South Carolina Supreme Court denied certiorari on March 6, 2014 (doc. 17-10). On March 18, 2014, Petitioner filed a petition for rehearing (doc. 17-11). The South Carolina Supreme Court denied rehearing on April 3, 2014 (doc. 17-12). Remittitur was issued April 21, 2014 (doc. 17-13).

## FEDERAL PETITION

On January 16, 2015, Petitioner filed this petition for a writ of habeas corpus pursuant to § 2254 (doc. 1). On June 25, 2015, Respondent filed a return and memorandum (doc. 17) and a motion for summary judgment (doc. 18). After being granted two extensions of time, Petitioner filed a response in opposition to the motion for summary judgment on September 14, 2015 (doc. 28).

In his federal petition, Petitioner makes the following claims:

**Ground One:** The Petitioner's Sixth Amendment right to the effective assistance of counsel was violated by trial counsel's failure to call Timothy Senn as a witness at the Petitioner's trial.

**Supporting Facts:** The Petitioner was charged with trafficking methamphetamine that occurred when police stopped the

7

vehicle the Petitioner was driving and realized that it was a mobile meth lab. The vehicle the Petitioner drove belonged to Timothy Senn. His primary defense at trial was his lack of knowledge of the contents of the vehicle and that Timothy knew what the vehicle contained. Timothy was not called as a witness for the defense. At a deposition held prior to the PCR hearing, Timothy admitted that the only reason the Petitioner drove the vehicle was because he asked the Petitioner to drive it home for him and that the Petitioner would not have driven the vehicle had he known what it contained. Defense counsel was ineffective for failing to call Timothy as a witness at trial.

**Ground Two:** The Petitioner's Sixth Amendment right to the effective assistance of counsel was violated by defense counsel's failure to sufficiently convey all plea offers to the Petitioner.

**Supporting Facts:** The Petitioner was charged with trafficking methamphetamine 400 grams. He was offered a plea to trafficking methamphetamine 10-28 grams. Defense counsel mistakenly believed that the State could not prove the weight alleged in the indictment, and the Petitioner rejected the plea offer based on defense counsel's mistake regarding the applicable law. Had defense counsel properly advised the Petitioner regarding the law that would be used to prove that the Petitioner possessed over 400 grams of methamphetamine, the Petitioner would have accepted the State's plea agreement.

**Ground Three:** The Petitioner's Sixth Amendment right to the effective assistance of counsel was violated by defense counsel's failure to adequately investigate the case and his failure to prepare for trial.

**Supporting Facts:** Defense counsel was unaware of the methodology the State would use to prove the weight of the drugs in support of the charge of trafficking methamphetamine 400 grams or more. During trial, defense counsel repeatedly objected to the testimony regarding the calculation of the weight of the drugs, explaining that he had not been provided with the methodology and that he was not aware of how the State would prove the drug weight. In response, the trial judge overruled the objections and stated that it was basic math. Defense counsel's inability to do basic math prior to trial and failure to investigate the methodology for calculating the drug weights constituted ineffective assistance of counsel.

**Ground Four:** The Petitioner's Sixth Amendment right to the effective assistance of counsel was violated by defense counsel's failure to request a charge on the lesser included offense of simple possession.

**Supporting Facts:** At trial, the State's expert testified before the jury that the drugs he had in his possession that he tested weighed 5.84 grams. Defense counsel failed to request a jury charge on the lesser-included offense of simple possession because defense counsel mistakenly believed that the expert testified that the drugs that he tested weighed over 10 grams. The charge was warranted based on the evidence presented at trial, and defense counsel's failure to request the charge constituted ineffective assistance of counsel.

(Doc. 1 at 5, 7-8, 10).

In his response to the respondent's motion for summary judgment, Petitioner has withdrawn Grounds Three and Four (doc. 28 at 3). Accordingly, only Grounds One and Two will be considered.

## APPLICABLE LAW AND ANALYSIS

### *Summary Judgment Standard*

Federal Rule of Civil Procedure 56 states, as to a party who has moved for summary judgment: "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). As to the first of these determinations, a fact is deemed "material" if proof of its existence or nonexistence would affect the disposition of the case under the applicable law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non–movant. *Id.* at 257. In determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non–moving party. *United States v. Diebold, Inc.,* 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the district court that there is no genuine issue of material fact. *Celotex*

9

*Corp. v. Catrett,* 477 U.S. 317, 323 (1986).   Once the movant has made this threshold demonstration, the non–moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings; rather, he must demonstrate that specific, material facts exist that give rise to a genuine issue. *Id.* at 324.   Under this standard, the existence of a mere scintilla of evidence in support of the petitioner's position is insufficient to withstand the summary judgment motion. *Anderson*, 477 U.S. at 252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude the granting of the summary judgment motion. *Ross v. Commc'ns Satellite Corp.,* 759 F.2d 355, 365 (4th Cir. 1985), *overruled on other grounds,* 490 U.S. 228 (1989).  "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.  Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson,* 477 U.S. at 248.

### Habeas Corpus Standard of Review

Because Petitioner filed his petition after the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), review of his claims is governed by 28 U.S.C. § 2254(d), as amended. *Lindh v. Murphy*, 521 U.S. 320 (1997). Under the AEDPA, federal courts may not grant habeas corpus relief on any claim that was adjudicated on the merits in state court unless the underlying state adjudication: (1) resulted in a decision that was contrary to, or involved an unreasonable application of clearly established federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable application of the facts in light of the evidence presented at the state court proceeding. 28 U.S.C. § 2254(d)(1), (2). "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Williams v. Taylor*, 529 U.S. 362, 411 (2000). Moreover, state court factual determinations are presumed to be correct, and the petitioner has the burden of rebutting this presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

10

***Exhaustion***

Before seeking habeas corpus relief, Petitioner first must exhaust his state court remedies. 28 U.S.C. § 2254(b)(1)(A). In South Carolina, a person in custody has two primary means of attacking the validity of his conviction: (1) through a direct appeal, or (2) by filing an application for PCR. State law requires that all grounds be stated in the direct appeal or PCR application. Rule 203, SCACR; S.C. Code Ann. §§ 17-27-10,-90; *Blakeley v. Rabon*, 221 S.E.2d 767, 770 (S.C.1976). If the PCR court fails to address a claim as is required by South Carolina Code § 17–27–80, counsel for the applicant must make a motion to alter or amend the judgment pursuant to Rule 59(e), SCRCP, to preserve the issue for appellate review. *Marlar v. State*, 653 S.E.2d 266, 267 (S.C. 2007).[1]

The South Carolina Supreme Court has held that the presentation of claims to the state court of appeals, without more, is sufficient to exhaust state remedies for federal habeas corpus review. *State v. McKennedy*, 559 S.E.2d 850 (S.C. 2002); *see also In re Exhaustion of State Remedies in Criminal and Post-Conviction Relief Cases*, 471 S.E.2d 454 (S.C. 1990). In *McKennedy*, the South Carolina Supreme Court specifically held that *In re Exhaustion* had placed discretionary review by the South Carolina Supreme Court "outside of South Carolina's ordinary appellate review procedure pursuant to *O'Sullivan [v. Boerckel*, 526 U.S. 838 (1999)]." 559 S.E.2d at 854. Accordingly, a claim would not be procedurally barred from review in this court for failure to pursue review in the South Carolina Supreme Court after an adverse decision in the South Carolina Court of Appeals, either after a direct appeal or after pursuing relief in a PCR petition.

---

[1]In *Bostick v. Stevenson*, 589 F.3d 160, 162–65 (4th Cir. 2009), the United States Court of Appeals for the Fourth Circuit found that, prior to the Supreme Court of South Carolina's November 5, 2007, decision in *Marlar*, South Carolina courts had not been uniformly and strictly enforcing the failure to file a motion pursuant to Rule 59(e), SCRCP, as a procedural bar. Accordingly, for matters in which there was a PCR ruling prior to November 5, 2007, the court will not consider any failure to raise issues pursuant to Rule 59(e) to effect a procedural bar.

A habeas petitioner must first present his claim to the court in a manner in which it may be reviewed on the merits. *Harris v. Reed*, 489 U.S. 255, 262 (1989); *Coleman v. Thompson*, 501 U.S. 722, 735 (1991). It is well settled in South Carolina that "[i]ssues not raised and ruled upon in the trial court will not be considered on appeal." *State v. Dunbar*, 587 S.E.2d 691, 693-94 (S.C. 2003). Moreover, it is not enough that the argument presented stems from the same factual scenario; rather, the legal argument must be the same as the argument presented below. *See, e.g., State v. Haselden*, 577 S.E.2d 445, 448 (S.C. 2003) (finding differing ground for objection did not preserve issue presented for review: defendant's objection on relevancy did not preserve argument that the evidence was improper character evidence); and *State v. Caldwell*, 662 S.E.2d 474, 482 (S.C. Ct. App. 2008) ("Because the argument raised on appeal does not appear to have been specifically raised below, it may not be preserved on appeal.").

### *Procedural Bar*

Procedural bypass, sometimes referred to as procedural bar or procedural default, is the doctrine applied when a petitioner who seeks habeas corpus relief on an issue after he failed to raise that issue at the appropriate time in state court and has no further means of bringing that issue before the state courts. In such a situation, the person has bypassed his state remedies and, as such, is procedurally barred from raising the issue in his federal habeas petition. Procedural bypass of a constitutional claim in earlier state proceedings forecloses consideration by the federal courts. *See Smith v. Murray*, 477 U.S. 527, 533 (1986). Bypass can occur at any level of the state proceedings if the state has procedural rules that bar its courts from considering claims not raised in a timely fashion.

If a prisoner has failed to file a direct appeal or an application for PCR and the deadlines for filing have passed, he or she is barred from proceeding in state court. If the state courts have applied a procedural bar to a claim because of an earlier default in the state courts, the federal court honors that bar. As the Supreme Court has explained:

> [State procedural rules promote] not only the accuracy and efficiency of judicial decisions, but also the finality of those

> decisions, by forcing the defendant to litigate all of his claims together, as quickly after trial as the docket will allow, and while the attention of the appellate court is focused on his case.

*Reed v. Ross*, 468 U.S. 1, 10–11 (1984).

"[A] federal court ordinarily may not consider claims that a petitioner failed to raise at the time and in the manner required under state law unless 'the prisoner demonstrates cause for the default and prejudice from the asserted error.'" *Teleguz v. Pearson*, 689 F.3d 322, 327 (4th Cir. 2012) (quoting *House v. Bell*, 547 U.S. 518, 536 (2006)). To show cause, a petitioner must "show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule," *Murray v. Carrier*, 477 U.S. 478, 488 (1986), or that "the factual or legal basis for the claim was not reasonably available to the claimant at the time of the state proceeding." *Roach v. Angelone*, 176 F.3d 210, 222 (4th Cir. 1999). "Alternatively, Petitioner may prove that failure to consider the claims will result in a fundamental miscarriage of justice." *McCarver v. Lee*, 221 F.3d 583, 588 (4th Cir. 2000) (citing *Coleman v. Thompson*, 501 U.S. at 750)). A fundamental miscarriage of justice equates to the conviction of someone who is actually innocent. However, "actual innocence" requires "factual innocence, not mere legal insufficiency." *Bousley v. United States*, 523 U.S. 614, 623 (1998).

In *Martinez v. Ryan*, 132 S.Ct. 1309, 1315 (2012), the Supreme Court of the United States carved out a "narrow exception" that modified the "unqualified statement in *Coleman* [501 U.S. at 754–55] that an attorney's ignorance or inadvertence in a postconviction proceeding does not qualify as cause to excuse a procedural default." In *Martinez*, the Court

> read *Coleman* as containing an exception, allowing a federal habeas court to find "cause," thereby excusing a defendant's procedural default, where (1) the claim of "ineffective assistance of trial counsel" was a "substantial" claim; (2) the "cause" consisted of there being "no counsel" or only "ineffective" counsel during the state collateral review proceeding; (3) the state collateral review proceeding was the "initial" review proceeding in respect to the "ineffective-assistance-of-trial-counsel claim"; and (4) state law

13

> requires that an "ineffective assistance of trial counsel [claim]
> . . . be raised in an initial-review collateral proceeding."

*Trevino v. Thaler*, 133 S.Ct. 1911, 1918 (2013) (quoting *Martinez*, 132 S. Ct. at 1318–19,

1320–21).  The Court in *Martinez* also noted:

> When faced with the question whether there is cause for an
> apparent default, a State may answer that the
> ineffective-assistance-of-trial-counsel claim is insubstantial, i.e.,
> it does not have any merit or that it is wholly without factual
> support, or that the attorney in the initial-review collateral
> proceeding did not perform below constitutional standards.

132 S. Ct. at 1319.

Respondent acknowledges that Petitioner has exhausted his state court

remedies as each ground was presented to the South Carolina Supreme Court following

rejection of the claims by the state PCR judge (doc. 17 at 11-12).  Accordingly, Grounds

One and Two will be considered on the merits.

### Ground One

In Ground One, Petitioner argues trial counsel was ineffective for failing to call

Timothy Senn as a witness at trial.

To be entitled to relief on an ineffective assistance claim, a petitioner must

show that (1) trial counsel's performance fell below an objective standard of

reasonableness, and (2) a reasonable probability exists that but for counsel's error, the

result of that proceeding would have been different. *Strickland v. Washington*, 466 U.S.

668, 687–94 (1984).   *Strickland* does not guarantee perfect representation, only a

"'reasonably competent attorney.'" *Id.* at 687 (quoting *McMann v. Richardson*, 397 U. S.

759, 770 (1970)).  There is a strong presumption that counsel rendered adequate assistance

and exercised reasonable professional judgment in making all significant decisions in the

case.  *Id.* at 690.

14

The review of ineffective assistance of counsel claims in federal habeas actions is not simply a new review of the merits; rather, habeas review is centered upon whether the state court decision was reasonable. *See* 28 U.S.C. § 2254(d). Additionally, each step in the review process requires deference—deference to counsel and deference to the state court that previously reviewed counsel's actions:

> Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult. The standards created by *Strickland* and § 2254(d) are both "highly deferential," and when the two apply in tandem, review is "doubly" so. The *Strickland* standard is a general one, so the range of reasonable applications is substantial. Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard.

*Harrington v. Richter*, 562 U.S. 86, 104 (2011) (internal citations omitted).

At trial, trial counsel asked several police officers who testified for the State whether they investigated who owned the vehicle Petitioner was driving on the night of his arrest (app. 44-45, 48, 55, 56, 72, 132). Officers Mark Jones and Christopher Bailey answered the car was registered to a relative of Petitioner's, Marvin Senn, who was deceased at the time of the incident, but who left the vehicle to another relative of Petitioner's, Timothy Senn (app. 56-57, 72-73). During closing arguments, trial counsel emphasized that one of the reasons the State failed to show that Petitioner knew the drugs and contraband were in the vehicle was because he did not own the vehicle (app. 327).

At the PCR hearing, Petitioner testified that Timothy Senn was his cousin and the owner of the vehicle (app. 426). Petitioner testified he told trial counsel he wanted Timothy to testify at trial, and he thought trial counsel was prepared to call him as a witness (app. 427). Petitioner stated Timothy would have testified he asked Petitioner to drive the

15

vehicle, and also that Petitioner would not have known of the contents in the vehicle (app. 487-88).

Petitioner also submitted Timothy Senn's deposition transcript as an exhibit (app. 429-30). In the deposition, Timothy testified he asked Petitioner to drive the vehicle on the night of his arrest so that he could drive another car, but that Petitioner was not aware of the contents of the vehicle and would not have likely driven the vehicle had he known of its contents (app. 698-99).

Trial counsel testified he did not plan on calling Timothy Senn as a witness at trial because he did not think his potential testimony that Petitioner did not know the contraband was in the vehicle was not plausible considering the strong odor of ammonia the police officers described (app. 523, 564). Trial counsel also explained that by calling Timothy as a witness, Timothy and Petitioner would have been subjected to the State's cross-examination concerning their other arrest for possession of methamphetamine, which would have discredited the defense's claim that Petitioner did not know about the contraband in the vehicle (app. 556). Trial counsel testified he instead tried to use Timothy as a red herring (app. 523). Trial counsel also explained that he may have called Timothy as a witness if Petitioner testified in his defense, but he did not want to call Timothy alone and lose his right to the final closing argument (app. 556).

The PCR judge found trial counsel was not deficient because he articulated valid strategic reasons for not calling Timothy Senn as a witness at trial (app. 623). The PCR judge also found Petitioner failed to demonstrate prejudice because "Timothy Senn's deposition offered nothing more for the defense" (*id.*).

The Court finds the PCR judge's finding that trial counsel was not ineffective under *Strickland* is not contrary to, or an unreasonable application of, clearly established federal law. *See* § 2254(d)(1). Petitioner failed to show trial counsel was deficient under *Strickland* because trial counsel presented valid strategic reasons for not calling Timothy

16

Senn as a witness at trial. *See McCarver v. Lee*, 221 F.3d 583, 594 (4th Cir. 2000) ("In evaluating trial counsel's performance, we must be highly deferential to counsel's strategic decisions and not allow hindsight to influence our assessment of counsel's performance.") (citing *Strickland*, 466 U.S. at 689). First, the defense would have lost the right to make the final closing argument had trial counsel called a witness. *See State v. Mouzon*, 485 S.E.2d 918, 921 (S.C. 1997) ("In a criminal prosecution, where a defendant introduces no testimony, he is entitled to the final closing argument to the jury."); *Abney v. State*, 757 S.E.2d 544, 547 (S.C. Ct. App. 2014), *reh'g denied* (Apr. 24, 2014), *cert. denied* (Jan. 15, 2015) ("What motions to file and whether to put on evidence so as to preserve the final word in closing argument are also strategic and tactical decisions to be made by trial counsel.") (internal quotations omitted). Second, Timothy's purported testimony that Petitioner did not know that contraband was in the vehicle would have opened the door for the State to introduce evidence that he and Petitioner were previously arrested for possession of methamphetamine and related contraband, which would have shown Petitioner was aware of the characteristics of methamphetamine. *See State v. Foster*, 582 S.E.2d 426, 431 (S.C. 2003) ("When a party introduces evidence about a particular matter, the other party is entitled to explain it or rebut it, even if the latter evidence would have been incompetent or irrelevant had it been offered initially.") (internal quotations omitted). Third, Timothy's testimony would not have, in trial counsel's opinion, refuted the police officers' testimony that Petitioner knew contraband was in the car because of the powerful smell of ammonia. Therefore, the jury would have likely still found Petitioner knew about the methamphetamine materials, even if Timothy testified.

Consequently, Petitioner also failed to demonstrate prejudice because he failed to show Timothy's testimony would have changed the outcome of trial. *See Strickland*, 466 U.S. at 693 (providing the burden is on the defendant to show "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the

17

proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome"). Accordingly, the PCR judge's finding that trial counsel was not ineffective was not contrary to, or an unreasonable application of, the deficiency and prejudice prongs of the *Strickland* test, and Respondent is entitled to summary judgment as to Ground One.

### Ground Two

Petitioner argues trial counsel was ineffective because he erroneously advised Petitioner he could win at trial based on the mistaken belief that the State would not be able to prove the weight of the methamphetamine Petitioner was charged with possessing, which led to Petitioner rejecting a favorable plea offer of ten years' imprisonment. Specifically, Petitioner argues trial counsel should have advised Petitioner that he had no legal basis to argue at trial that he did not possess the methamphetamine and he was likely to be convicted and sentenced to a mandatory minimum of twenty-five years' imprisonment.

The Sixth Amendment requirement of effective assistance of counsel and the *Strickland* test extend to the plea bargaining process. *Hill v. Lockhart*, 474 U.S. 52, 57 (1985). Where a defendant claims counsel's ineffective advice led to the rejection of a plea offer and the defendant's subsequent conviction at trial, the "defendant must show that but for the ineffective advice of counsel there is a reasonable probability that the plea offer would have been presented to the court (i.e., that the defendant would have accepted the plea and the prosecution would not have withdrawn it in light of intervening circumstances), that the court would have accepted its terms, and that the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that in fact were imposed." *Lafler v. Cooper*, 132 S. Ct. 1376, 1385 (2012).

At trial, Agent McCoy was qualified as an expert in forensic chemistry and drug identification (app. 152). Agent McCoy testified he took samples from two liquid containers found in Petitioner's vehicle, and each sample tested positive for methamphetamine (app. 157). Outside of the presence of the jury, trial counsel objected

to the State introducing evidence of the weight of the methamphetamine because none of the discovery materials received by the defense prior to trial indicated the weight of the drugs (app. 158). Trial counsel further argued that because the State had disposed of the liquid in the two containers that Agent McCoy drew samples from, the State should not have been able to present evidence of their weight because the weight of the full containers was never measured by the State (app. 159). The State responded that Agent McCoy intended to testify that he knew the weight of the full containers because it could be extrapolated from the weight of the samples (app. 159-60). The State noted the weight of the samples was provided to the defense in discovery (app. 160). The trial judge overruled trial counsel's objection (app. 169).

Before the jury, Agent McCoy testified he took a one milliliter sample of each of the containers' liquid to test for methamphetamine (app. 234). He further testified that, to calculate the total weight of the liquid in the containers, he multiplied the weight of the one-milliliter samples he drew by the number of milliliters the containers held (*id.*). He stated the results of his calculation was that just one of the containers weighed 2,567 grams, well over the 400 gram statutory minimum to be found guilty of trafficking (app. 238).

At the PCR hearing, Petitioner testified the State made a plea offer of three to ten years' imprisonment if Petitioner would plead guilty to a non-violent offense (app. 419). Petitioner also testified that trial counsel advised him not to take the plea offer because the State failed to provide evidence of the weight of the drugs, and trial counsel felt he could get the State to offer a plea deal for eighteen months imprisonment (app. 419-20). Petitioner stated trial counsel told him there was no possibility he could be convicted for "not having any drugs" (app. 420). Petitioner further testified the State eventually offered to allow Petitioner to plead guilty to a violent offense and serve three to ten months in prison (*id.*). Petitioner explained he also rejected this plea offer because trial counsel stated he could win at trial (app. 421). Petitioner testified that during the plea negotiations, trial counsel did not discuss the statutory language of the charge he was facing, did not explain that the charge carried a minimum sentence of twenty-five years imprisonment, and did not

conduct an investigation into the State's evidence (app. 421-22).  Petitioner testified that had trial counsel done these things he would have accepted the State's plea offers instead of going to trial because of the difference in prison time (app. 423).

Jeffrey Hollifield was a qualified as an expert in forensic chemistry (app. 493). Hollified testified that had he been contacted by trial counsel prior to Petitioner's trial, he could have independently tested the State's evidence and informed trial counsel that the State would be able to prove at trial that the two liquid containers contained methamphetamine and weighed well over 400 grams, the minimum weight needed to prove Petitioner's guilt of drug trafficking (app. 517).

Trial counsel testified that in discovery, the State first provided a report stating the two containers tested positive for methamphetamine, but it did not provide a measurement of the containers' weight (app. 532).  He testified the State later provided a supplemental report with measurements of the two sample vials drawn from the containers, but no measurements of the containers themselves (*id.*).  Trial counsel stated he asked the solicitor how the State was going to prove the weight of the drugs was more than 400 grams and the solicitor merely stated "We're going to prove it" (app. 533).  Trial counsel also testified he was not aware the State would use simple math to extrapolate the weight of the containers from their samples, but he also testified he did not believe the trial judge would accept the State's method of determining the weight of the containers without actually weighing them (app. 534).  When asked by PCR counsel why he did not think it was important to determine the amount of the drugs prior to trial when Petitioner was facing a mandatory minimum sentence, trial counsel answered that he thought the State could not prove the methamphetamine weighed over 400 grams, based on what he had received in discovery (app. 558).

Trial counsel testified the State offered to allow Petitioner to plead guilty to a gun charge in exchange for three to ten years imprisonment but Petitioner refused to plead guilty because "it wasn't his methamphetamine" (app. 528).  Trial counsel stated he explained to Petitioner the elements of the charge against him and that the offense carried

a mandatory minimum twenty-five-year sentence (app. 541).  Trial counsel testified that once Petitioner refused to plead guilty, he developed the trial strategy to contest the State's assertion that Petitioner knew the drugs were in the vehicle and show that the State failed to prove the methamphetamine weighed over 400 grams (app. 567).

The PCR judge found trial counsel was not ineffective for failing to adequately investigate Petitioner's case and advise Petitioner during plea negotiations (app. 618-19). The PCR judge found Petitioner's rejection of the State's plea offer was made knowingly and voluntarily because Petitioner was fully apprised of the charges against him and the potential sentences, as well as the discovery materials and plea offers (app. 619).  The PCR judge further found Petitioner rejected the plea offers because he maintained that the drugs were not his (*id.*).  Also, the PCR judge found that, as to this claim, trial counsel's testimony was credible but Petitioner's testimony was not credible (app. 618).

The Court finds that the PCR judge's findings that trial counsel was not ineffective was not contrary to, or an unreasonable application of, clearly established federal law.  *See* § 2254(d)(1).  To prove trial counsel was ineffective, Petitioner was required to show, among other things, that he would have accepted the State's plea offer, but for trial counsel's erroneous advice.  *See Lafler*, 132 S. Ct. at 1385.  The evidence presented at the PCR hearing supports the PCR judge's finding that trial counsel fully advised Petitioner about the State's plea offer and the consequences of going to trial.  Trial counsel testified he talked to Petitioner about the State's evidence, explained the charges Petitioner faced and the potential sentences, and his likelihood of success at trial. However, trial counsel testified Petitioner made the decision to reject the plea offer and go to trial because Petitioner claimed he did not own the methamphetamine.  As to Petitioner's claim that he rejected the State's plea offer based on trial counsel's advice that they could win at trial because of the State's inability to prove the weight of the methamphetamine, trial counsel's testimony shows he only adopted the strategy of challenging the State's evidence on the weight of the methamphetamine *after* Petitioner rejected the plea offer based on

21

other considerations.  Further, the PCR judge found Petitioner's testimony on this issue was not credible, and therefore, as the only evidence presented to show Petitioner would have accepted the plea offer if trial counsel had provided better plea advice, Petitioner's testimony was insufficient to meet his burden of showing he would have accepted the plea offer but for trial counsel's purported deficiencies.  *See Lafler*, *supra*; *Elmore v. Ozmint*, 661 F.3d 783, 850 (4th Cir. 2011) ("We must be 'especially' deferential to the state PCR court's findings on witness credibility, and we will not overturn the court's credibility judgments unless its error is 'stark and clear.' ") (quoting *Sharpe v. Bell*, 593 F.3d 372, 378 (4th Cir. 2010)).  Therefore, the PCR judge's finding that trial counsel was not ineffective in advising Petitioner during the plea negotiations was not contrary to, or an unreasonable application of the standards in *Strickland* and *Lafler*.  Respondent is entitled to summary judgment as to Ground Two.

## CONCLUSION AND RECOMMENDATION

Wherefore, based upon the foregoing, it is recommended that the respondent's motion for summary judgment (doc. 18) be  granted.  The attention of the parties is directed to the notice on the next page.

s/ Kevin F. McDonald
United States Magistrate Judge

January 26, 2016
Greenville, South Carolina

22

**Notice of Right to File Objections to Report and Recommendation**

        The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. **Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections.** "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (*quoting* Fed. R. Civ. P. 72 advisory committee's note).

        Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

**Robin L. Blume, Clerk of Court**
**United States District Court**
**300 East Washington Street — Room 239**
**Greenville, South Carolina 29601**

        **Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).